IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL SKINNER,                                                         CV. 06-122 KI

              Plaintiff,                                              OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

              Defendant.

KING, Judge:

## INTRODUCTION

Plaintiff Paul Skinner ("Skinner"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 USC section 405(g).

1 - OPINION AND ORDER

For the reasons set forth below, the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Skinner filed an application for benefits on December 12, 2001, alleging disability since November 3, 2001, due to generalized anxiety disorder, personality disorder, major depression, and borderline intellectual functioning. His application was denied initially and upon reconsideration. On February 23, 2004, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated May 24, 2004, the ALJ found Skinner was not entitled to benefits. The Appeals Council issued an order on October 7, 2004, remanding Skinner's case to the ALJ for another hearing. A supplemental hearing was held on June 8, 2005. On July 14, 2005, the ALJ found that Skinner was not entitled to benefits. The Appeal's Council denied Skinner's request for review, making the ALJ's decision the final decision of the Commissioner. Skinner now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404, Subpart P, Appendix 1.  If so, claimant is disabled.  If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four.  20 CFR §§ 404.1520(d), 416.920(d).

<u>Step Four</u>.  The Commissioner determines whether claimant is able to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five.  20 CFR §§ 404.1520(e), 416.920(e).

<u>Step Five</u>.  The Commissioner determines whether claimant is able to do any other work.  If not, claimant is disabled.  If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled.  If the Commissioner does not meet this burden, claimant is disabled.  20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id*

/ / /

4  - OPINION AND ORDER

**ALJ's DECISION**

At step one, the ALJ found Skinner had not engaged in substantial gainful activity since the alleged onset of disability on November 3, 2001.  This finding is not in dispute.

At step two, the ALJ found Skinner had the medically determinable severe impairments of an affective disorder and an anxiety disorder. This finding is not in dispute.

At step three, the ALJ found that Skinner's impairments did not meet or medically equal a listed impairment.  This finding is not in dispute.

The ALJ determined that Skinner retained the residual functional capacity ("RFC") physically to perform a full range of work, and mentally to perform simple, unskilled jobs with a specific vocational preparation ("SVP") of two or less, avoiding contact with the general public with occasional contact with co-workers and minimal contact with supervisors.  This finding is in dispute.

At step four, the ALJ found that Skinner was unable to perform his past relevant work as a self-employed gardener/landscaper, customer service worker in a retail nursery, bus driver, pizza delivery person, cashier, residential care worker, and hotel clerk.

At step five, the ALJ determined that Skinner retained the ability to perform work as a laundry worker, semiconductor bonder, and mail clerk (private, not postal). As a result, the ALJ found Skinner not disabled within the meaning of the Act.

/ / /

/ / /

/ / /

/ / /

 5  - OPINION AND ORDER

**FACTUAL BACKGROUND**

Skinner was born in 1959, and was 42 years old at the time of the alleged onset of disability. He completed the 12th grade in special education classes. Tr. 110.[2]

The medical records in this case accurately set out Skinner's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

**DISCUSSION**

Skinner contends that the ALJ erred by: (1) failing properly to advise him of his right to representation; (2) failing to fully and fairly develop the record; (3) improperly rejecting the opinion of treating physicians; (4) failing at step five to identify occupations Skinner can perform; (5) finding him not fully credible; (6) improperly rejecting third party testimony, and (7) posing an inadequate vocational hypothetical question . Because the third assertion is dispositive, the court will not address the other arguments.

I. Opinions of the Treating and Examining Physicians

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). In general, the opinion of specialists concerning matters relating to their specialty are entitled to more weight than the opinions of nonspecialists. *Id.;* §

---

[2] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

404.1527(d)(5).  An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record.  *Id.* at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998).  If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR 404.1527.  *Id.* citing SSR 96-2p.  An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record.  *Id.*

The ALJ correctly notes that the ultimate issue of disability is reserved to the Commissioner.  20 CFR § 404.1527(e).  The physician's opinion must be considered in light of (l) the length of the relationship; (2)  the kinds and extent of examinations and tests performed; (3)  the supportability of the opinion by medical signs; (4)  the consistency of the opinion with the record as a whole; (5)  whether the source of the opinion is a specialist in the relevant area; and (6)  the extent to which the source is familiar with other information  in the case record.  20 CFR § 404.1527(d).

A.  Vaughn Jackson, M.D.

Dr. Jackson was Skinner's primary care physician since February 2000.  Tr. 106, 192.  He diagnosed anxiety/depression, and continued prescribing Effexor.  Tr. 189.  In April 2002, Dr. Jackson added a prescription for Xanax for "severe anxiety."  Tr. 234.  In June 6, 2002, Dr. Jackson noted that Skinner "is actually talking to himself.  He is afraid to go out.  He doesn't want to go to the mail if anybody is around."  Tr. 232.  Skinner was "very emotional," and "having occasional auditory hallucinations."  *Id.* Dr. Jackson diagnosed psychosis and bipolar

disorder and prescribed Risperdal. Tr. 231. Dr. Jackson increased the Risperdal dosage on June 10, 2002. Tr. 230.

In February 2003, Dr. Jackson noted pressured speech, and diagnosed bipolar disorder, major depression, panic disorder, and alcohol abuse. Tr. 222. He prescribed Zoloft, continued the Xanax, and referred Skinner to mental health counseling. Dr. Jackson completed a form in which he stated that Skinner had "no work capacity," and would be disabled in excess of 12 months. On the same form, Dr. Jackson responded to the question "What would allow this person to be employable?" with "needs psych eval and therapy and meds." Tr. 215, 216.

The ALJ stated:

> Although Dr. Vaughn has a longstanding treating relationship with claimant, he is not a mental health specialist and is not given the weight regarding mental health conditions that a mental health specialist would be given. Additionally, within the same work assessment, Dr. Jackson inconsistently opines that claimant would be employable with psych evaluation, therapy, and meds. Also, Dr. Jackson's diagnosis of bipolar disorder on the work assessment and his diagnosis of bipolar disorder and mild psychosis in his office notes are not accompanied by objective medical findings. [Citation omitted.] A diagnosis of bipolar disorder or psychosis has not been opined by any of the other numerous examining mental health specialists and has been explicitly refuted by Ms. Ashurst, a mental health specialist who treated claimant over a span of many years. Ms. Ashurst noted that claimant was curious regarding whether or not the claimant has manic episodes and noted that she 'discussed with him the hallmarks of mania and he and I both came to the conclusion that he does not have manic episodes.' Ms. Ashurst also noted that claimant had not ever reported any symptoms of psychosis in the years that she has known the claimant. [Citation omitted.] The undersigned considers but gives no weight to the assessment of Dr. Jackson, because the physician does not provide specific limits, does not separate the effect of alcohol, is not a specialist, and offers diagnoses that are not consistent with the diagnoses offered by specialists in the field.

Tr. 24.

That he is not a mental health specialist is not a valid reason for rejecting Dr. Jackson's opinion. *Lester v. Chater,* 81 F3d 821, 833 (9th Cir 1995). The ALJ's assertion that Dr. Jackson's opinion is internally inconsistent is not supported by the evidence. Dr. Jackson opined that Skinner had "no work capacity" and "will be disabled to the extent they are unable to work at any job for a period of 12 months or more due to a physical or mental impairment which is disabling." Tr. 216. He further opined that Skinner would be employable with "psych eval & therapy & meds." *Id.*

The ALJ correctly notes that Dr. Jackson's diagnoses of bipolar disorder and psychosis differ from the diagnoses of other examining physicians and mental health specialists. However, the limitations arising from the diagnoses do not vary. Dr. Wesley diagnosed major depressive disorder, anxiety disorder, alcohol abuse rule out dependence, personality disorder NOS (obsessive-compulsive/dependent/avoidant/histrionic/paranoid) and assessed a Global Assessment of Functioning ("GAF") score of 40[3]. Dr. Wesley outlined in detail Skinner's limitations, i.e., marked limitations on maintaining a schedule or sustaining a routine without

---

[3] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)). It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations. *Id* at 34. A GAF score between 31 and 40 indicates "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). A GAF score between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Id* at 34.

9 - OPINION AND ORDER

special supervision, marked limitations on social interactions, and marked limitations in the ability to set realistic goals or make plans independently of others. In addition, Dr. Wesley found that Skinner's ability to maintain attention and concentration for extended periods varied by situation from unimpaired to extremely impaired. His ability to work in coordination with or proximity to others without being distracted by them was extremely limited. His ability to interact appropriately with the general public was extremely limited. His ability to accept instruction or respond appropriately to criticism from supervisors was extremely limited. His ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes was extremely limited. Tr. 251-52. All of these limitations are consistent with Dr. Jackson's assessment that Skinner had no work capacity.

The ALJ referred to the reports of Rhonda Ashurst, M.S./Ed.S., a professional counselor who saw Skinner routinely between September 1996 and August 1998, and again from June 2001 until at least July 2002. Tr. 195. Skinner argues that Ms. Ashurst is a non-medically acceptable source and that the ALJ may not properly reject a treating physician's opinion because of an inconsistency with her opinion. Regardless, I find that the opinions are not inconsistent in any significant way. Ms. Ashurst disagrees with Dr. Jackson's diagnosis of psychosis and bipolar disorder. Tr. 219. Ms. Ashurst diagnosed generalized anxiety disorder, major depressive disorder, and alcohol dependence, and assessed GAF scores of 41 in February 2002 and 39 in July 2002. These GAF scores indicate that Ms. Ashurst agrees with Dr. Jackson's assertion that Skinner had no work capacity, regardless of the label applied to the disorder.

The ALJ's determination to disregard the opinion of Dr. Jackson is not supported by substantial evidence.

B. <u>Immaculate Wesley, Psy.D.</u>

Dr. Wesley examined Skinner in March 2002 and August 2003. Tr. 197-210, 244-50. She conducted clinical interviews and administered the WAIS III, the WMS-III, trail making tests A and B, and determined a Full Scale IQ of 72, which indicates borderline intellectual functioning. The balance of her findings are set out above.

As to Dr. Wesley, the ALJ stated:

> The undersigned again includes in the residual functional capacity the limitation on interaction with persons opined by Dr. Wesley. The undersigned gives considerable but not controlling weight to the opinion of Dr. Wesley, because the doctor is a specialist in the mental health field and has examined claimant on several occasions. However, the undersigned does not incorporate the doctor's assessed limitations on performing activities with a schedule, regular attendance, punctuality, sustaining an ordinary routine, setting realistic goals, and making independent plans. In unskilled work, goals and plans would already be made for the claimant. Also, the evidence indicates that claimant is able to make independent plans for travel. Dr. Wesley does not provide a rationale why the claimant cannot perform on schedule, attendance, punctuality, or sustaining a routine. Dr. Wesley supports her overall assessment based on "claimant's memory and IQ," however, in the same assessment she inconsistently assesses that claimant's limitation of understanding and memory is "NONE." [Citation omitted.] Further, on exam on March 5, 2002, Dr. Wesley opined, "This examiner feels that if [claimant] would have appropriate medication and perhaps go for some drug and alcohol treatment that he might find that he could work out in the world and feel a heck of a lot better." [Citation omitted.] This statement in combination with the Work Capacity Evaluation described clearly indicates that Dr. Wesley opines that claimant can work if his job is unskilled, if he is not around people, and if he is compliant with recommendations, which is consistent with the residual functional capacity as determined.

Tr. 23.

11 - OPINION AND ORDER

Thereafter, the ALJ accepts the opinion of the non-examining non-treating state agency physician on the grounds that this physician "was able to review all documentary evidence from all sources to piece together a complete picture." Tr. 24. This reviewing physician concluded that Skinner had moderate limitations in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, and pace. However, the reviewing physician's opinion is dated March 2002. Tr. 202-214. Ms. Ashurt's letter is dated July 2002. Dr. Jackson's report is dated February 2003, and Dr. Wesley's second examination report is dated August 2003. The reviewing physician did not have all of the documentary evidence because some of it did not yet exist. The ALJ's reliance on the state agency reviewing physician to reject portions of Dr. Wesley's opinion is not supported by substantial evidence.

The ALJ also cites Dr. Wesley's March 2002 comment that "if he would have appropriate medication and perhaps go for some drug and alcohol treatment that he might find that he could work out in the world and feel a heck of a lot better." Tr. 201. This assessment is not a reason to discount Dr. Wesley's opinion as to Skinner's current abilities, which she describes elsewhere in the same report as "[s]ocial interaction is very impaired. he is very, very anxious and very uncomfortable around people and also very depressed. Adaptation is poor. It would seem he would need a payee." Tr. 200. "He certainly sounds like he has never been a fully functional human being. The jobs he has had require no skill at all with perhaps the landscape gardening might require some skill, but he has been an unskilled laborer and cannot even handle that." *Id.* Dr. Wesley concluded that Skinner's GAF was 35.

The ALJ's rejection of Dr. Wesley's assessment of limitations is not supported by substantial and legitimate or clear and convincing reasons.

12 - OPINION AND ORDER

III. Remand For Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir), *cert. denied,* 531 US 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F3d at 1178.

> The court should grant an immediate award of benefits when:
> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

/ / /

/ / /

/ / /

/ / /

If the court credits as true the diagnoses and findings of the treating and examining physicians, it is clear that Skinner is unable to sustain employment. The court, therefore concludes this matter should not be remanded for further proceedings. *See, Schneider v. Comm'r.* 223 F3d 968 (9th Cir 2000).

Accordingly, the court remands this matter for the purpose of permitting the Commissioner to calculate and to award benefits to Skinner.

## **CONCLUSION**

For these reasons, the court reverses the decision of the Commissioner and remands this matter pursuant to sentence four of 42 USC § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

Dated this __19th__ day of April, 2007.

                    /s/ Garr M. King
                    GARR M. KING
                    United States District Judge